## STATE *v.* ARCHER.

It is only in a capital case that the respondent is allowed the process of the State to compel the attendance of his witnesses, and not in such a case, unless the respondent is poor and unable to furnish them himself.

Any person, who heard the respondent testify on a former hearing, may testify what he then stated for the purpose of contradicting his present story.   Such impeaching testimony is not confined to such witnesses as took minutes of his former testimony.

A respondent is not obliged to testify so as to criminate himself in relation to any collateral matters, even though he volunteers as a witness in chief; but if the witness chooses to testify, on cross-examination, that he has been guilty of a felony, it would be competent as affecting the credit of the witness.

Witnesses, not experts, cannot, as a general rule, give their opinions as to the mental soundness or unsoundness of the respondent.

Proof of the actual commission of a rape by the respondent, would warrant a conviction for an assault with intent to commit rape.

INDICTMENT, against James A. Archer for an assault with intent to commit rape upon the person of Amanda Heaton, in October, 1873.

Before the trial, the respondent, who had no property, moved for state process to compel the attendance of witnesses in his behalf. The court ruled that he was not entitled to it, and denied the motion; to which the respondent excepted. The respondent had testified at the preliminary examination before the magistrate, who took minutes of his testimony. Upon his trial before the jury, the State proposed to ask a witness, who was present at the preliminary examination, how the respondent there testified upon a particular point. The respondent objected, on the ground that the minutes of the magistrate were the best evidence; but the evidence was admitted, subject to exception. The respondent testified in his own behalf upon the jury trial. After he had been informed by the court of his privilege to decline to give answers criminating himself in reference to other transactions than the alleged assault (and after he had been allowed to consult with counsel), the State were permitted to cross-examine him, as follows:— " Shortly before you went to Boston, were you accused of stealing sheep from Carr?" *Ans.* " Yes." " Were you arrested?" *Ans.* " Yes." " Were you discharged on condition of leaving the state?" *Ans.* " Yes." " Did you steal the sheep?" *Ans.* " Yes." The foregoing was admitted against the respondent's objection that it was irrelevant; and the respondent excepted to its admission. The respondent proposed to ask witnesses who were not experts,—" From your knowledge of Archer, and observation you have made in regard to him, what is your opinion about whether his mind had been impaired by sickness, or disease of any kind?" The question was excluded, subject to exception. It had previously appeared that the respondent was subject to epileptic fits.

The jury were instructed, in substance, that the actual commission of a rape would justify a conviction for an assault with an intent to commit a rape. To this instruction the respondent excepted. The respondent, having been convicted and sentenced, tendered this bill of exceptions, which was allowed.

*Farr*, solicitor, for the state.

*E. D. Rand*, for the respondent.

SARGENT, C. J. It is only when the punishment for the offence may be death that the respondent is entitled to process of the state to compel the attendance of witnesses. Gen. Stats., ch. 243, sec. 1. Section 13 of the same chapter was an amendment made to the old statute in 1862, to prevent persons who were able to procure their own witnesses from being allowed to furnish them at the expense of the state, even in a murder case. This exception must be overruled.

Witnesses may be contradicted by showing that they have made statements at other times conflicting with those made on the stand. This may be done by proving such statements, either under oath or not, and these

statements may be proved by any person who heard the statement, whether he took minutes of the testimony of the witness or not. Perhaps a written statement, subscribed and sworn to before a magistrate, would be more likely to be correct than any other; but that is not this case. Here were only some minutes which were taken by the magistrate when the witness testified. These memoranda might be more reliable than the recollection of witnesses who took no minutes. Other witnesses may have heard as distinctly and understood as perfectly what was said as did the magistrate, and their testimony at the time would be entitled to as much credit as his. It is only a question of memory, and the only distinction is not one of competency, but of the weight of the evidence—the degree of credit to which it is entitled.

The testimony of the respondent in regard to his stealing sheep we think was properly admitted. This crime of stealing sheep is by our statute, as well as by the common law, a felony—a crime of so dark a hue that it rendered the person convicted of it incompetent to testify as a witness at all. But by act of July 13, 1871, our legislature have provided that "no person shall be incompetent to testify on account of having been convicted of an infamous crime, but the record of such conviction may be used to affect his credit as a witness." Before this act, it was held that a person convicted of an infamous crime was incapacitated from being a witness, upon the ground that such conviction was an impeachment and condemnation of his general character for truth. This was the doctrine of the common law. But by our statute the incompetency is removed, but evidence of the conviction would still be competent as bearing upon his credit.

Now if the fact, that a man has been proved by evidence and found by twelve men to be guilty of a crime, is evidence of his bad character for truth, shall it be said that his own deliberate admission that he committed the same crime is not competent as tending to show the same thing? nay, more, when he not only admits the fact, but with the oath of God upon him testifies that such admission is true? The form of the conviction is nothing but the establishing of the fact of his guilt, and cannot that fact as well be established by the confession of the criminal and his sworn statement to the truth of that confession? We think the testimony was not only competent, but relevant and material, and this objection must be overruled.

The witness was not obliged to criminate himself, and he had been properly cautioned by the court upon that point. If after that he chose voluntarily to swear to his own guilt of such a crime, it was clearly competent as tending to show him to be unworthy of credit. If the conviction for an infamous offence is evidence of bad character for truth, it is the fact that the party is guilty of the offence that affects his character, and not the mere fact of conviction. It is the guilt that blackens the character, and not the simple conviction of guilt; and guilt may be proved by solemn confession of the party, as well as by the verdict of a jury and the judgment of a court. *Hutchins* v. *Gerrish*, 52 N. H. 205; *Curtis* v. *Cochran*, 50 N. H. 242, 244, and cases cited.

The next objection, that witnesses who were not experts were not allowed to give their opinion concerning the mental soundness of the respondent, must also be overruled. That question was settled in *Boardman* v. *Woodman*, 47 N. H. 120, and *State* v. *Pike*, 49 N. H. 399; and the same question was decided in the same way in *State* v. *Jones*, 50 N. H. 369, though that point was admitted in the opinion. We have no wish, nor are we prepared, to overrule these decisions, and allow the opinions of witnesses who are not experts to be given on this most difficult, most intricate, and most important question, when as a rule they are excluded on nearly all other subjects far less difficult and less important.

As to the last point in the case, whether the actual commission of a rape would justify a conviction for an assault with intent to commit a rape, we find *State* v. *Shepard*, 7 Conn. 54, *Wilson* v. *State*, 24 Conn. 57, and *Com.* v. *Cooper*, 15 Mass. 187, directly in favor of such ruling, while *Commonwealth* v. *Roby*, 12 Pick. 496, seems to hold the opposite opinion, with some other similar cases. That was a case where the respondent had been convicted of some minor offence, simply a misdemeanor, and this conviction was pleaded as a bar to a charge for the higher offence, such as murder. We can very well see why it might be proper to hold in that way when a man had been convicted of simple assault and battery, and should undertake to make that an answer to a charge of murder in the first degree, alleged to have been committed by such assault and battery. Such a perversion of justice should not be tolerated, of course. But while that might be true, it would not follow that the man charged with murder might not be convicted of any lesser offence which was included in the higher one; nor would it follow that a man indicted for murder in the second degree might not be convicted on that charge upon evidence which might have satisfied the jury that he was not only guilty of the crime charged, but even of murder in the first degree, where both offences were felonies, and where the punishment for the offence charged would be in full for all the offence.

The respondent cannot complain that he is charged with or convicted of the lesser of two felonies instead of the greater, when there might have been doubt upon the evidence which of the two was the proper charge to make, and when the prosecuting officer, out of abundant caution, chooses the lesser offence, and would be held to be bound by that election, and could not proceed upon the charge of rape against this man after he had suffered the full penalty of the offence with which he had been charged in this indictment. We think the authorities as well as reason sustain this view, and the authorities in Massachusetts also sustain this view. " It is no defence to an indictment for manslaughter, that the homicide therein alleged appears by the evidence to have been committed with malice aforethought and was therefore murder, but the defendant in such case may, notwithstanding, be properly convicted of manslaughter.". *Com.* v. *McPike*, 3 Cush. 181; *Com.* v. *Tuck*, 20 Pick. 356; *Com.* v. *Gray*, 14 Gray 100; *Com.* v. *Dean*, 109 Mass. 349;

*State* v. *Calligan*, 17 N. H. 253 ; *State* v. *Williams*, 23 N. H. 321 ;
*State* v. *Bateman*, 42 N. H. 490 ; *State* v. *Snyder*, 50 N. H. 150.

There must therefore be

*Judgment on the verdict.*